COPY

1  BRIAN S. KABATECK, SBN 152054
   (bsk@kbklawyers.com)
2  JOSHUA H. HAFFNER, SBN 188652
   (jhh@kbklawyers.com)
3  DOMINIQUE NASR, SBN 275265
   (dn@kbklawyers.com)
4  **KABATECK BROWN KELLNER LLP**
   644 South Figueroa Street
5  Los Angeles, California 90017
   Telephone: (213) 217-5000
6  Facsimile: (213) 217-5010

7  MARK MILSTEIN, State Bar No. 155513
   mmilstein@milsteinadelman.com
8  LEE JACKSON, State Bar No. 216970
   ljackson@milsteinadelman.com
9  **MILSTEIN ADELMAN LLP**
   2800 Donald Douglas Loop North
10 Santa Monica, California 90405
   Telephone: (310) 396-9600
11 Fax: (310) 396-9635

12 Attorneys for Plaintiff Anthony Nguyen, on behalf
   of himself and all others similarly situated
13

14              **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16 ANTHONY NGUYEN, an individual, on     CASE NO. CV11 10256 PSG (PLAx)
   behalf of himself and all others similarly
17 situated
   ,                                      **COMPLAINT FOR DAMAGES AND**
18              Plaintiffs,               **OTHER RELIEF.**

19 vs.
                                          **JURY TRIAL DEMANDED**
20 VIEGA, INC., a Delaware corporation;
   VIEGA, LLC, a Delaware limited liability
21 company; VG PIPE, LLC, a Delaware
   corporation; VANGUARD PIPING
22 SYSTEMS, INC., a Kansas corporation;
   VANGUARD INDUSTRIES, INC., a
23 Delaware corporation; VIEGA GMBH &
   CO. KG, a German company; VIEGA
24 INTERNATIONAL GMBH, a German
   company; UPONOR CORPORATION, a
25 Finnish corporation; UPONOR GROUP, a
   Finnish corporation; UPONOR, INC., an
26 Illinois corporation; WIRSBO COMPANY,
   an Illinois company; UPONOR WIRSBO
27 COMPANY, an Illinois company; DOE
   INDIVIDUALS 1-20,000; and ROE
28 BUSINESS or GOVERNMENTAL
   ENTITIES 1-20,000,

              Defendants.

                          1
   ─────────────────────────────────────────
                     COMPLAINT

Plaintiff Anthony Nguyen, on behalf of themselves and all others similarly situated ("Plaintiffs"), are informed, believe and allege as follows:

## INTRODUCTION

1.     This is a class action for damages and other relief brought pursuant to FRCP 23 on behalf of all similarly-situated California homeowners or common-interest communities who have suffered damage as a result of owning homes with, or whose members' homes contain, potable-water-delivery systems that utilize defective high-zinc-content brass Vanguard/Viega-brand or Wirsbo/Uponor-brand fittings and attendant high-zinc-content brass plumbing components limited to: ball valves, pressure reducing valves, shut-off valves, angle stops, isolation valves, gate valves, recirculation pumps, swing check valves, ice box shut-off valves, washing machine box shut-off valves, and hose bibs.

2.     The plumbing components at issue are defective, and damage Plaintiffs and class members' homes.  Plaintiffs bring this action to seek redress on behalf of the following class:

> All California owners and common-interest communities whose residences, or whose members' residences, contain the high-zinc-content brass Vanguard/Viega-brand or Wirsbo/Uponor-brand potable-water-delivery systems and attendant high-zinc-content brass plumbing components.

## THE PARTIES

3.     Plaintiff Anthony Nguyen is an individual, and resident of Los Angeles County, State of California, whose principal residence is located at 25470 Prado De Oro, Calabasas, CA 91302.

### A.     The Vanguard Homes and Defendants.

4.     The "Vanguard Homes" are all residences in California that contain or contained potable-water-delivery systems utilizing defective high-zinc-content brass Vanguard/Viega-brand fittings and attendant high-zinc-content brass plumbing components.  The defective plumbing systems and components have prematurely failed due to dezincification, which is a well-known form of corrosion attack to the high-zinc-content brass components.  These defects have caused

2

COMPLAINT

resulting damage to property, including but not limited to loss of structural integrity and/or strength of the brass components, weeping, leaks, blockages, restriction and/or loss of water flow and/or pressure, loss of use and function of the plumbing system and related improvements and/or appliances provided by others, including the leaching of lead into the homes' potable-water-delivery systems, resultant damage to the Vanguard Homes and the work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest and/or expenses associated therewith. These damages and others are expected to increase over time as the defective systems and components continue to corrode.

5.      Plaintiffs' are informed and believe, and thereon allege, that the following defendants including ROES and DOES are/were responsible for the design, development, testing, manufacture, distribution, supply, marketing, sale, and warranting of potable-water-delivery systems utilizing defective high-zinc-content brass Vanguard/Viega-rand fittings and attendant high-zinc-content brass plumbing components in California and/or were involved in the planning, development, design, construction, warranting, repair, selection of materials, supply of materials, installation of materials and/or sale of the Vanguard Homes that contain potable-water-delivery systems utilizing defective high-zinc-content brass Vanguard/Viega-brand fittings and attendant high-zinc-content brass plumbing components, and proximately caused the injuries and damages herein alleged:

a.      Defendant VIEGA, INC. is a Delaware corporation that is the successor-in-interest by merger to VANGUARD INDUSTRIES, INC. and VANGUARD PIPING SYSTEMS, INC., and is the parent corporation of VIEGA, LLC, which in turn acted as VIEGA, INC.'S agent and the agent of VIEGA, INC.'S parent corporations, VIEGA INTERNATIONAL GMBH and VIEGA GMBH & CO. KG, and is part of a single, collective business enterprise of the former and/or existing Vanguard/Viega entities named herein. VIEGA, INC. is thus responsible for the design, manufacture, distribution, marketing, and sale of the defective

high-zinc-content brass Vanguard/Viega-brand potable-water-delivery systems described herein.

b.      Defendant VIEGA, LLC is a Delaware limited liability company that is the successor-in-interest by merger to VANGUARD PIPING SYSTEMS, INC., and is therefore responsible for the design, manufacture, distribution, marketing, and sale of the defective high-zinc-content brass Vanguard/Viega-brand potable-water-delivery systems described herein.  VIEGA, LLC was at all times relevant hereto acting as the agent of VIEGA, INC. and its parent corporations, VIEGA INTERNATIONAL GMBH and VIEGA GMBH & CO. KG.

c.      Defendant VG PIPE, LLC is a Delaware corporation that that is responsible for the design, manufacture, distribution, marketing, and sale of the defective high-zinc-content brass Vanguard/Viega-brand potable-water-delivery systems described herein.  VG PIPE, LLC was acting as the agent of VANGUARD INDUSTRIES, INC., and is part of a single, collective business enterprise of the former and/or existing Vanguard/Viega entities named herein.

d.      Defendant VANGUARD PIPING SYSTEMS, INC. is a Kansas corporation that is responsible for the design, manufacture, distribution, marketing, and sale of the defective high-zinc-content brass Vanguard/Viega-brand potable-water-delivery systems described herein.  VANGUARD PIPING SYSTEMS, INC. was succeeded by and merged with VIEGA, LLC, which in turn took on VANGUARD PIPING SYSTEMS, INC.'S liabilities for the defective Vanguard/Viega-brand yellow-brass potable-water-delivery system. VANGUARD PIPING SYSTEMS, INC. was acting as the agent of VANGUARD INDUSTRIES, INC., and these businesses act as a single, collective business enterprise.

e.      Defendant VANGUARD INDUSTRIES, INC. is a Delaware corporation that is responsible for the design, manufacture, distribution, marketing, and sale of the defective high-zinc-content brass Vanguard/Viega-brand potable-water-

delivery systems described herein.  VANGUARD INDUSTRIES, INC. was the parent of VANGUARD PIPING SYSTEMS, INC. before VANGUARD INDUSTRIES, INC. was merged with and sold to VIEGA, INC., its successor-in-interest.  As a result, VIEGA, INC. assumed all of VANGUARD INDUSTRIES, INC.'S risks, liabilities, and assets, as well as those of its siblings and its siblings' successors.

f.      Defendant VIEGA INTERNATIONAL GMBH is a German company that is the parent company of VIEGA, INC., which acted as VIEGA INTERNATIONAL GMBH'S agent.  VIEGA INTERNATIONAL GMBH is the agent of its parent corporation, VIEGA GMBH & CO. KG with respect to VIEGA GMBH & CO. KG'S North American operations, and is part of a single, collective business enterprise of the former and/or existing Vanguard/Viega entities named herein.  VIEGA INTERNATIONAL GMBH is thus responsible for the design, manufacture, distribution, marketing, and sale of the defective high-zinc-content brass Vanguard/Viega-brand potable-water-delivery systems described herein.

g.      Defendant VIEGA GMBH & CO. KG is a German company that is responsible for the design, manufacture, distribution, marketing, and sale of the defective high-zinc-content brass Vanguard/Viega-brand potable-water-delivery systems described herein.  VIEGA GMBH & CO. KG is the parent, grandparent, or similar of the other Vanguard/Viega business entities and/or enterprises identified above, and/or otherwise is their successor-in-interest.

h.      Defendants VIEGA, INC.; VIEGA, LLC; VG PIPE, LLC; VANGUARD PIPING SYSTEMS, INC.; VANGUARD INDUSTRIES, INC.; VIEGA GMBH & CO. KG; and VIEGA INTERNATIONAL GMBH are hereinafter collectively referred to as the "Viega Defendants."

i.      The Viega Defendants form a worldwide group or conglomerate of interrelated companies, with VIEGA GMBH & CO. KG at the apex, that are

5

COMPLAINT

commonly engaged in the line of business that is designing, developing, testing, manufacturing, distributing, supplying, marketing, selling, and warranting plumbing products for the construction industry.

ii.      VIEGA GMBH & CO. KG'S subsidiaries, VIEGA, INC.; VIEGA, LLC; VG PIPE, LLC; VANGUARD PIPING SYSTEMS, INC.; VANGUARD INDUSTRIES, INC.; and VIEGA INTERNATIONAL GMBH, perform functions that are compatible with and assist VIEGA GMBH & CO. KG in the pursuit of its own business.

iii.     But for the existence of its subsidiaries, VIEGA GMBH & CO. KG would have to undertake to perform substantially similar services as those undertaken by its subsidiaries.  VIEGA GMBH & CO. KG exerts control over its subsidiaries that is so pervasive and continual that they may be considered the agents, members, alter egos, or instruments of one another and especially their apex company, VIEGA GMBH & CO. KG, regardless of the maintenance of corporate formalities.

**B.     The Wirsbo Homes and Defendants.**

6.    The "Wirsbo Homes" are all residences in California that contain or contained potable-water-delivery systems utilizing defective high-zinc-content brass Wirsbo/Uponor-brand fittings and attendant high-zinc-content brass plumbing components.  The defective plumbing systems and components have prematurely failed due to dezincification, which is a well-known form of corrosion attack to the high-zinc-content brass components.  These defects have caused resulting damage to property, including but not limited to loss of structural integrity and/or strength of the brass components, weeping, leaks, blockages, restriction and/or loss of water flow and/or pressure, loss of use and function of the plumbing system and related improvements and/or appliances provided by others, including the leaching of lead into the homes' potable-water-delivery systems, resultant damage to the Wirsbo Homes and the work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, economic losses including costs of maintenance and/or repair, and all reasonable

6

COMPLAINT

fees, costs, interest and/or expenses associated therewith. These damages and others are expected to increase over time as the defective systems and components continue to corrode.[1]

7. Plaintiffs are informed, believe, and thereupon allege that the following defendants, including ROES and DOES are/were responsible for the design, development, testing, manufacture, distribution, supply, marketing, sale, and warranting of potable-water-delivery systems utilizing defective high-zinc-content brass Wirsbo/Uponor-brand fittings and attendant high-zinc-content brass plumbing components in California and/or were involved in the planning, development, design, construction, warranting, repair, selection of materials, supply of materials, installation of materials and/or sale of the Wirsbo Homes that contain potable-water-delivery systems utilizing defective high-zinc-content brass Wirsbo/Uponor-brand fittings and attendant high-zinc-content brass plumbing components, and proximately caused the injuries and damages herein alleged:

a. Defendant UPONOR CORPORATION is a Finnish corporation that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein, both directly and indirectly, by and through its agents and collective business enterprise partners, including, but not limited to UPONOR, INC.

b. Defendant UPONOR GROUP is a Finnish corporation that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

c. Defendant UPONOR, INC. is an Illinois corporation that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein.

---

[1] The Vanguard Homes and Wirsbo Homes are collectively referred to as the "Subject Homes."

UPONOR, INC. is the agent of its parent, UPONOR CORPORATION, with whom it acted as a single, collective and common business enterprise.

d.      Defendant UPONOR WIRSBO COMPANY is an Illinois company that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

e.      Defendant WIRSBO COMPANY is an Illinois company that is responsible for the design, manufacture, and/or distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system described herein, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

f.      Defendants UPONOR CORPORATION; UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY are hereinafter collectively referred to as the "Uponor Defendants."

        i.      The Uponor Defendants form a worldwide group or conglomerate of interrelated companies, with UPONOR CORPORATION at the apex, that are commonly engaged in the line of business that is designing, developing, testing, manufacturing, distributing, supplying, marketing, selling, and warranting plumbing and climate-control products for the construction and public utility industries.

        ii.     UPONOR CORPORATION'S subsidiaries, UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY, perform functions that are compatible with and assist UPONOR CORPORATION in the pursuit of its own business.

iii.     But for the existence of its subsidiaries, UPONOR CORPORATION would have to undertake to perform substantially similar services as those undertaken by its subsidiaries. UPONOR CORPORATION exerts control over its subsidiaries that is so pervasive and continual that they may be considered the agents, members alter egos, or instruments of one another and especially their apex company, UPONOR CORPORATION, regardless of the maintenance of corporate formalities.

8.     The Vanguard Homes and Wirsbo Homes are collectively referred to herein as the "Subject Homes."

9.     DOE INDIVIDUALS 1-10,000 and ROE BUSINESS or GOVERNMENTAL ENTITIES 1-10,000 (hereinafter referred to collectively as "ROE DEFENDANTS 1-10,000"), whose identities are presently unknown, are the subject of ongoing discovery and therefore are sued under fictitious names. ROE DEFENDANTS 1-10,000 were responsible for and engaged in the design, development, testing, manufacture, distribution, supply, marketing, sale, and warranting of the potable-water-delivery systems and the like attendant high-zinc-content brass plumbing components in California, and proximately caused the injuries and damages herein alleged. Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities as they are ascertained.

10.     ROE INDIVIDUALS 10,001-20,000 and ROE BUSINESS or GOVERNMENTAL ENTITIES 10,001-20,000 (hereinafter referred to collectively as "ROE DEFENDANTS 10,001-20,000"), whose identities are presently unknown, are the subject of ongoing discovery and therefore are sued under fictitious names. ROE DEFENDANTS 10,001-20,000 were involved in the planning, development, design, construction, warranting, repair, selection of materials, supply of materials, installation of materials and/or sale of the Subject Homes, which contain potable-water-delivery systems utilizing high-zinc-content brass Wirsbo/Uponor-brand or Vanguard/Viega-brand plumbing systems and attendant high-zinc-content brass plumbing components, and proximately caused the injuries and damages herein

1 | alleged. Plaintiffs will seek leave to amend this Complaint to allege their true names and

2 | capacities as they are ascertained.

3 |       11.    All allegations in this complaint are based on information and belief and/or are

4 | likely to have evidentiary support after a reasonable opportunity for further investigation or

5 | discovery. Whenever allegations in this complaint are contrary or inconsistent, such allegations

6 | shall be deemed alternative.

7 |                          **JURISDICTION AND VENUE**

8 |       12.    This Court has jurisdiction in this matter, and venue is proper, because this

9 | Complaint arises from Defendants' design, development, testing, manufacture, distribution,

10 | supply, marketing, sale, and warranting of the defective high-zinc-content brass Vanguard/Viega-

11 | brand or Wirsbo/Uponor-brand fittings utilized in residential potable-water-delivery systems and

12 | attendant high-zinc-content brass plumbing components in California, including in the venue of

13 | the United States District Court, Central District of California. Many of the homes that are the

14 | subject of this action are located in the Central District of California.

15 |       13.    This Court has jurisdiction over VIEGA, INC.; VIEGA, LLC; VG PIPE, LLC;

16 | VANGUARD PIPING SYSTEMS, INC.; VANGUARD INDUSTRIES, INC.; UPONOR, INC.;

17 | WIRSBO COMPANY; and UPONOR WIRSBO COMPANY because their activities in

18 | California have been systematic, continuous, and substantial.

19 |       14.    This Court has jurisdiction over the non-North American Viega Defendants,

20 | VIEGA GMBH AND CO. KG and VIEGA INTERNATIONAL GMBH,[3] because they are the

21 | alter egos of their subsidiaries and/or their subsidiaries are their members, agents, and/or

22 | predecessors-in-interest. The Viega Defendants act as a single, collective, and common business

23 | enterprise for VIEGA GMBH AND CO. KG'S own business. There is such a unity of ownership

24 | and interest between the non-North American Viega Defendants and their subsidiaries that the

25 | ownership and interest of one is inseparable from the other. Adherence to the corporate fiction

26 |

27 | [3] The non-North American Viega Defendants' subsidiaries include: VIEGA, INC.; VIEGA,
LLC; VG PIPE, LLC; VANGUARD PIPING SYSTEMS, INC.; and VANGUARD

28 | INDUSTRIES, INC.

would sanction fraud and promote injustice. The non-North American Viega Defendants exert control over their subsidiaries that is so pervasive and continual that the subsidiaries may be considered their agents, members, or instruments. But for this important relationship, the non-North American Viega Defendants would have to undertake to perform substantially similar services as their subsidiaries.

15.     This Court has jurisdiction over the non-North American Uponor Defendants, UPONOR CORPORATION and UPONOR GROUP,[4] because they are the alter egos of their subsidiaries and/or their subsidiaries are their members, agents, and/or predecessors-in-interest. The Uponor Defendants as a single, collective, and common business enterprise for UPONOR CORPORATION'S own business. There is such a unity of ownership and interest between the non-North American Uponor Defendants and their subsidiaries that the ownership and interest of one is inseparable from the other. Adherence to the corporate fiction would sanction fraud and promote injustice. The non-North American Uponor Defendants exert control over their subsidiaries that is so pervasive and continual that the subsidiaries may be considered their agents, members, or instruments. But for this important relationship, the non-North American Uponor Defendants would have to undertake to perform substantially similar services as their subsidiaries.

## GENERAL ALLEGATIONS

16.     The Vanguard/Viega-brand plumbing system that was installed and used in the Vanguard Homes is a PEX-type plastic pipe product that is designed to distribute potable water throughout these homes. It is made of cross linked polyethylene. Polyethylene, referred to as PE, is the raw material and the X refers to the manufacturing process of cross linking the polyethylene across its molecular chains. The Vanguard/Viega-brand PEX pipe connects to other pipe and plumbing components (including, but not limited to attendant high-zinc-content brass valves, pumps, bibs, and regulators) via Vanguard/Viega-brand high-zinc-content brass fittings.

---

[4] The non-North American Uponor Defendants' subsidiaries include: UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY.

17.    The Wirsbo/Uponor-brand plumbing system that was installed and used in the Wirsbo Homes is a PEX-type plastic pipe product that is designed to distribute potable water throughout these homes.  It is made of cross linked polyethylene.  Polyethylene, referred to as PE, is the raw material and the X refers to the manufacturing process of cross linking the polyethylene across its molecular chains.  The Wirsbo/Uponor-brand PEX pipe connects to other pipe and plumbing components (including, but not limited to attendant high-zinc-content brass valves, pumps, bibs, and regulators) via Wirsbo/Uponor-brand high-zinc-content brass fittings.

18.    Brass is an alloy primarily composed of copper and zinc.  High-zinc-content brass Vanguard/Viega-brand and Wirsbo/Uponor-brand fittings and other attendant high-zinc-content brass plumbing components that were installed and are used as part of the plumbing systems in the Subject Homes are corroding due to a well-known chemical reaction called dezincification.  "High-zinc-content" means having a zinc content of greater that 15% and/or not otherwise treated to resist dezincification.  Dezincification is a form of selective leaching or removal of an element (zinc) from the brass alloy by corrosion.  As a result, the high-zinc-content brass fittings and attendant high-zinc-content brass plumbing components become porous, brittle, and blocked with zinc oxide and/or zinc carbonate, inevitably leading to restricted water flow and/or pressure, reduced material strength, corrosion, cracks, and leaks.  Therefore, the installation and use of high-zinc-content brass fittings and attendant high-zinc-content brass plumbing components in the Subject Homes causes substantial injury/damage to the Association and its members by damaging and impairing the ability of the plumbing system to effectively operate as a potable-water-delivery system.

19.    Plaintiff Anthony Nguyen purchased one of the Subject Homes, located at 25470 Prado De Oro, Calabasas, CA  91302, containing high-zinc-content brass fittings and plumbing components.  These defective high-zinc-content brass fittings and plumbing components have caused damage to plaintiff Anthony Nguyen's home.

20.    Plaintiffs are informed, believe, and thereupon allege that the above-referenced high-zinc-content brass plumbing deficiencies and defective conditions have proximately caused damage to homeowners, homeowner associations, and their members.  These damages include,

but are not limited to: dezincification corrosion, leaking lead into the potable-water-delivery system, plumbing blockages, reduced water flow and/or pressure, loss of function, loss of structural integrity, cracks, weeps, leaks, system failures, and damage to other property, appliances, and components, including the quality of the potable water delivered through the system by the leaching of lead into the homeowners' water.  Plaintiffs are informed and believe that these damages are pervasive and exist in the Subject Homes.

21.     The Subject Homes may have suffered damages in other ways and to other extents not presently known to Plaintiffs, and not specified above.  Plaintiffs reserve the right to amend this Complaint upon discovery of any additional damages not referenced herein, and/or to present evidence of the same at the time of trial of this action.

22.     Plaintiffs and the class members' home have actionable defects which violate the standards set forth in California Civil Code §895, et seq.  Individual product manufacturers, material suppliers, builders, general contractors, and subcontractors are subject to an action for recovery of damages for the violation of the standards enumerated in California Civil Code §895, et seq., including California Civil Code § 896(a)(15), which provides as follows:  "Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems."

23.     Plaintiffs and class members will also be required to retain the services of experts and consultants to investigate the nature and extent of the defects, and seeks damages for those investigative costs pursuant to California Civil Code §944.

24.     Plaintiffs have incurred, and will incur during the pendency of this action, attorney's fees and costs, which are necessary for the prosecution of this action and will result in a benefit to members of the class.  This action will result in the enforcement of important rights supported by a strong public policy affecting the public interest which will confer a significant benefit on the general public and a large class of persons, where the necessity and burden of private enforcement are such as to make an award appropriate pursuant to California Code of Civil Procedure §1021.5.

COMPLAINT

25.     Plaintiffs allege and assert that its claims and this legal action have all been brought in a timely manner and within the statute of limitations and repose periods, if applicable. The defective nature of the high-zinc-content brass fittings and attendant high-zinc-content brass plumbing components alleged herein are latent in nature.  Plaintiffs and class members did not discover, and could not reasonably have discovered, their defective nature until a date within the statute of limitations for each cause of action alleged.

26.     To the fullest extent of the law, Plaintiffs seek recovery for injuries and/or damages to property.  Plaintiffs' and their members' damages exceed $75,000.

## CLASS ALLEGATIONS

27.     A class action is alleged pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The class consists of:

>       All California owners and common-interest communities whose residences, or whose members' residences, contain the high-zinc-content brass Vanguard/Viega-brand or Wirsbo/Uponor-brand potable-water-delivery systems and attendant high-zinc-content brass plumbing components.

28.     The class is so numerous that joinder would be impractical and disposition of the class members' claims in a class action is in the best interests of the parties and judicial economy.

29.     This action involves questions of law and fact common to each member of the class, in that all members of the proposed class have suffered damages as a result of the installation of defective high-zinc-content brass Vanguard/Viega-brand or Wirsbo/Uponor-brand fittings and potable-water-delivery systems and attendant high-zinc-content brass plumbing components in their homes or in their members' homes.  The common questions of law and fact include, but are not limited to, the following:

>       a.     Whether California Civil Code §896(a)(15) was violated by the design, manufacture, supply and/or utilization of high-zinc-content brass fittings and plumbing components.

b.      Whether defendants violated the "unlawful" prong of the UCL in connection with designing, manufacturing distributing, installing and using high-zinc-content brass fittings and plumbing components.

c.      Whether defendants' violated the Consumer Legal remedies Act in connection with their conduct as to the high-zinc-content brass fittings and plumbing components;

d.      Whether defendants violated the "fraudulent" prong of the UCL in connection with designing, manufacturing distributing, installing and using high-zinc-content brass fittings and plumbing components.

e.      Whether defendants violated the "unfair" prong of the UCL in connection with designing, manufacturing distributing, installing and using high-zinc-content brass fittings and plumbing components.

f.      Whether defendant breached any warranties in connection with designing, manufacturing distributing, installing, selling, and using high-zinc-content brass fittings and plumbing components.

g.      Whether defendants were negligent in connection with designing, manufacturing distributing, installing, selling, failing to warn, and using high-zinc-content brass fittings and plumbing components.

h.      Whether the Viega defendants are alter egos, or otherwise jointly liable.

i.      Whether the Uponor defendants are alter egos, or otherwise jointly liable.

j.      Whether any defenses raised are meritorious.

k.      Whether the high-zinc-content brass fittings and plumbing components at issue corrode through a process of dezincification so as to impede the useful life of the plumbing system.

COMPLAINT

l.      Whether high-zinc-content brass fittings and plumbing components at issue need to be removed and replaced.

30.     The claims of the Plaintiffs and relief herein sought are typical of the claims and relief that could generally be sought by each member of this proposed class.

31.     Plaintiffs can fairly and adequately protect the interests of all members of the proposed class.  The Subject Homes all contain defective high-zinc-content brass Vanguard/Viega-brand or Wirsbo/Uponor-brand fittings and potable-water-delivery systems and attendant high-zinc-content brass plumbing components.

32.     Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and thus establish incompatible standards of conduct for the party or parties opposing the class.

33.     Plaintiffs' attorneys have the experience, knowledge, and resources to adequately and properly represent the interests of the proposed class.

## FIRST CAUSE OF ACTION

**(Breach of Implied Warranties of Fitness for Particular Purpose, Merchantability, Habitability, Quality, and Workmanship)**

**(By Plaintiffs Against All Defendants)**

34.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

35.     Plaintiffs are informed, believe, and thereupon allege that Defendants were engaged in and are responsible for the design, development, testing, manufacture, distribution, supply, marketing, sale, and warranting of defective high-zinc-content brass Vanguard/Viega-brand and/or Wirsbo/Uponor-brand potable-water-delivery systems and attendant high-zinc-content brass plumbing components installed and used in residences constructed in California and/or were involved in the planning, development, design, construction, warranting, repair, selection of materials, supply of materials, installation of materials, and/or sale of the Subject Homes, which contain defective high-zinc-content brass Vanguard/Viega-brand or

1   Wirsbo/Uponor-brand potable-water-delivery systems and attendant high-zinc-content brass

2   plumbing components, and that Plaintiffs and their members were the intended beneficiaries

3   and/or the intended third-party beneficiaries of each and every such act and/or warranty.

4        36.    By designing, manufacturing, marketing, supplying, selecting, installing, and/or

5   causing the high-zinc-content brass Vanguard/Viega-brand and/or Wirsbo/Uponor-brand potable-

6   water-delivery systems and attendant high-zinc-content brass plumbing components to be

7   installed in the Subject Homes, Defendants expressly and/or impliedly warranted that said

8   systems and components were free of defective materials, were of merchantable quality, were

9   suitable and fit for the ordinary purpose for which said systems and components were intended,

10  were safe, were proper, and that the Subject Homes were constructed in a workmanlike manner

11  and were habitable.  Defendants also actively sought to distribute their products in this

12  marketplace by making certain representations and warranties about their plumbing system to

13  national, state, and/or local agencies such as building authorities where the product system was

14  marketed and sold as approved for use in accordance with national, state, and/or local laws.  As a

15  result of these representations and warranties, national, state, and/or local agencies approved the

16  high-zinc-content brass Vanguard/Viega-brand and Wirsbo/Uponor-brand plumbing systems and

17  fittings and attendant high-zinc-content brass plumbing components for use, conveying the

18  defective information and warranties to Plaintiffs and their members.

19       37.    Defendants impliedly warranted that the high-zinc-content brass Vanguard/Viega-

20  brand and/or Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-content brass

21  plumbing components were fit for the particular purpose they were intended, and that said

22  systems and components would perform in a defect-free manner.

23       38.    Plaintiffs are informed, believe, and thereupon allege that Defendants breached

24  said warranties by failing to adequately and properly develop, design, manufacture, assemble,

25  distribute, market, sell, warrant, select materials, install, and/or cause to be installed the high-

26  zinc-content brass Vanguard/Viega-brand and/or Wirsbo/Uponor-brand plumbing systems and

27  attendant high-zinc-content brass plumbing components in the Subject Homes and/or by failing

28

1    to provide defect-free plumbing systems and attendant plumbing components in the Subject

2    Homes.

3         39.    As a direct and proximate result of the breaches of the implied warranties by

4    Defendants, Plaintiffs and their members have been, and will continue to be, caused damage as

5    more fully described herein including, but not limited to product failures, dezincification

6    corrosion, leaks, blockages, loss of use and function of the plumbing systems and related

7    improvements and/or appliances provided by others, resultant damage to the Subject Homes and

8    work of others (e.g., water loss, damage to framing, drywall and/or other building materials),

9    resultant damage to water quality, including leaching of lead from the high-zinc-content brass

10   fittings into the potable-water-delivery systems of the Subject Homes, economic losses including

11   costs of maintenance and/or repair, and all reasonable fees, costs, interest, and/or expenses

12   associated therewith.  These damages and others are expected to increase over time as the

13   defective systems and components continue to fail.

14        40.    As a further direct and proximate result of the breaches of the implied warranties

15   by Defendants, Plaintiffs and their members have suffered damages in an amount not fully

16   known but believed to be within the jurisdiction of this Court in that they have been and will

17   hereafter be required to perform works of repair, restoration, and construction to all or portions of

18   the Subject Homes to prevent further damage and to restore the Subject Homes to their proper

19   habitable condition.  Plaintiffs and their members will establish the amount of their damages at

20   the time of trial according to proof.

21        41.    Plaintiffs incorporate the prayer for relief as though set forth herein.

22                        **SECOND CAUSE OF ACTION**

23                       **(Breach of Express Warranties)**

24   **(By Plaintiffs Against the Viega Defendants and Roe Defendants 1-10,000)**

25        42.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this

26   Complaint as though fully set forth herein.

27        43.    The Viega Defendants and ROE DEFENDANTS 1-10,000 did prepare, distribute,

28   and provide express warranties as part of the Vanguard/Viega-brand potable-water-delivery

---

COMPLAINT

systems and fittings.  These warranties provide coverage for certain defects in these plumbing systems and components.  These warranties were intended for use by customers and end-users of the plumbing systems, including Plaintiffs and their members.

44.     The Viega Defendants and ROE DEFENDANTS 1-10,000 expressly warranted that the high-zinc-content brass Vanguard/Viega-brand plumbing system was developed, designed, manufactured, and distributed in conformance with any and all applicable safety standards, building and product codes, standards, and regulations.  In so doing, the Viega Defendants and ROE DEFENDANTS 1-10,000 expressly warranted that their plumbing system was fit, sound, and safe, and would remain so for a reasonable period of time.

45.     Plaintiffs are informed, believe, and thereupon allege that the express warranties made and used by the Viega Defendants and ROE DEFENDANTS 1-10,000 have at all relevant times been written in the form of, by example, and without limitation: product catalogues, instruction manuals, ASTM and/or other codes or standards, specifically including NSF standards and/or codes, advertising flyers, brochures, sales literature, promotional packages, signs, magazine and newspaper articles and advertisements, all designed to promote the introduction and ultimate sale of the defective high-zinc-content brass Vanguard/Viega-brand plumbing system in this marketplace, and to promote the belief that this system had been properly developed, designed, manufactured, and distributed for safe and effective use in this jurisdiction.

46.     As a direct and proximate result of the breaches of the express warranties by the Viega Defendants and ROE DEFENDANTS 1-10,000 as herein alleged, Plaintiffs and their members have been, and will continue to be, caused damage as more fully described herein including, but not limited to blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, blockages, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, resultant damage to the Vanguard Homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including the leaching of lead into the Vanguard Homes' potable-water-

1  delivery systems, and economic losses including costs of maintenance and/or repair, and all

2  reasonable fees, costs, interest, and/or expenses associated therewith.  These damages and others

3  are expected to increase over time as the defective systems and components continue to fail.

4       47.     As a further direct and proximate result of the breaches of the express warranties

5  by the Viega Defendants and ROE DEFENDANTS 1-10,000 as herein alleged, Plaintiffs and

6  their members have suffered injuries and/or damages to property in an amount not fully known

7  but believed to be within the jurisdiction of this Court in that they have been and will hereafter be

8  required to perform works of repair, restoration, and construction to all or portions of the

9  Vanguard Homes to prevent further damage and to restore the Vanguard Homes to their proper

10  condition.  Plaintiffs and their members will establish the amount of their damages at the time of

11  trial according to proof.

12       48.     Plaintiffs incorporate the prayer for relief as though set forth herein.

13  ### THIRD CAUSE OF ACTION

14  ### (Breach of Express Warranties)

15  ### (By Plaintiffs Against the Uponor Defendants and Roe Defendants 1-10,000)

16       49.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this

17  Complaint as though fully set forth herein.

18       50.     The Uponor Defendants and ROE DEFENDANTS 1-10,000 did prepare,

19  distribute, and provide express warranties as part of the Wirsbo/Uponor-brand potable-water-

20  delivery systems and fittings.  These warranties provide coverage for certain defects in these

21  plumbing systems and components.  These warranties were intended for use by customers and

22  end-users of the plumbing systems, including Plaintiffs and their members.

23       51.     The Uponor Defendants and ROE DEFENDANTS 1-10,000 expressly warranted

24  that the high-zinc-content brass Wirsbo/Uponor-brand plumbing systems were developed,

25  designed, manufactured, and distributed in conformance with any and all applicable safety

26  standards, building and product codes, standards, and regulations.  In so doing, the Uponor

27  Defendants and ROE DEFENDANTS 1-10,000 expressly warranted that their plumbing system

28  was fit, sound and safe, and would remain so for a reasonable period of time.

52.     Plaintiffs are informed, believe, and thereupon allege that the express warranties made and used by the Uponor Defendants and ROE DEFENDANTS 1-10,000 have at all relevant times been written in the form of, by example, and without limitation: product catalogues, instruction manuals, ASTM and/or other codes or standards, specifically including NSF standards and/or codes, advertising flyers, brochures, sales literature, promotional packages, signs, magazine and newspaper articles and advertisements, all designed to promote the introduction and ultimate sale of the defective high-zinc-content brass Wirsbo/Uponor-brand plumbing system in this marketplace, and to promote the belief that this system had been properly developed, designed, manufactured, and distributed for safe and effective use in this jurisdiction.

53.     As a direct and proximate result of the breaches of the express warranties by the Uponor Defendants and ROE DEFENDANTS 1-10,000 as herein alleged, Plaintiffs and their members have been, and will continue to be, caused damage as more fully described herein including, but not limited to blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, blockages, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, resultant damage to the Wirsbo Homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including the leaching of lead into the Wirsbo Homes' potable-water-delivery systems, and economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest, and/or expenses associated therewith.  These damages and others are expected to increase over time as the defective systems and components continue to fail.

54.     As a further direct and proximate result of the breaches of the express warranties by the Uponor Defendants and ROE DEFENDANTS 1-10,000 as herein alleged, Plaintiffs and their members have suffered injuries and/or damages to property in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the Wirsbo Homes to prevent further damage and to restore the Wirsbo Homes to their proper condition.

1    Plaintiffs and their members will establish the amount of their damages at the time of trial

2    according to proof.

3         55.    Plaintiffs incorporate the prayer for relief as though set forth herein.

4    ### FOURTH CAUSE OF ACTION

5    ### (Breach of Express Warranties)

6    ### (By Plaintiffs Against Defendants, Excluding the Viega Defendants, Uponor

7    ### Defendants, and Roe Defendants 1-10,000)

8         56.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this

9    Complaint as though fully set forth herein

10         57.    Defendants, excluding the Viega Defendants, Uponor Defendants, and ROE

11    DEFENDANTS 1-10,000, did prepare, distribute, and provide express warranties as part of the

12    sale of the Subject Homes and the installation of the high-zinc-content brass Vanguard/Viega-

13    brand or Wirsbo/Uponor-brand high-zinc-content brass plumbing systems and attendant high-

14    zinc-content brass plumbing components in the homes.  These warranties provide coverage for

15    certain defects in the plumbing systems and were intended for use by the owners of the Subject

16    Homes, including Plaintiffs' members.

17         58.    Defendants expressly warranted to Plaintiffs, their members, and/or their

18    predecessors-in-interest or their public representatives, that the high-zinc-content brass

19    Vanguard/Viega-brand or Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-

20    content brass plumbing components were developed, designed, manufactured, and distributed in

21    conformance with any and all applicable safety standards, building and product codes, standards,

22    and regulations.  In so doing, Defendants and ROE DEFENDANTS 10,001-20,000 expressly

23    warranted that their plumbing system was fit, sound, and safe, and would remain so for a

24    reasonable period of time.

25         59.    Plaintiffs are informed, believe, and thereupon allege that the express

26    warranties made and used by Defendants have at all relevant times been written in the form

27    of, by example and without limitation: product catalogues, instruction manuals, ASTM

28    and/or other codes or standards, specifically including NSF standards and/or codes,

advertising flyers, brochures, sales literature, promotional packages, signs, and magazine and newspaper articles, and advertisements, all designed to promote the introduction and ultimate sale of the homes and the high-zinc-content brass Vanguard/Viega-brand and Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-content brass plumbing components installed in the homes in this marketplace, and to promote the belief that the homes and the homes' plumbing systems had been properly developed, designed, manufactured, and distributed for use in this jurisdiction.

60.    As a direct and proximate result of the breaches of the express warranties by the Defendants, Plaintiffs and their members have been, and will continue to be, caused damage as more fully described herein including, but not limited to blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, leaks, loss of water flow and/or pressure, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, resultant damage to the Subject Homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including the leaching of lead into the Subject Homes' potable-water-delivery systems, and economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest, and/or expenses associated therewith.  These damages and others are expected to increase over time as the homes' defective plumbing systems and components continue to fail.

61.    As a further direct and proximate result of the breaches of the express warranties by Defendants and ROE DEFENDANTS 10,001-20,000 as herein alleged, Plaintiffs and their members have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the Subject Homes to prevent further damage and to restore the Subject Homes to their proper habitable condition. Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.

1    62.    Plaintiffs incorporate the prayer for relief as though set forth herein.

2                        **FIFTH CAUSE OF ACTION**

3    **(Negligence, Including Negligent Misrepresentation, Failure to Warn/Instruct,**

4              **Negligent Selection and Negligent Installation)**

5                    **(By Plaintiffs Against All Defendants)**

6    63.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this

7    Complaint as though fully set forth herein.

8    64.    Plaintiffs allege that Defendants knew or should have known that the high-zinc-

9    content brass Vanguard/Viega-brand and Wirsbo/Uponor-brand plumbing systems and attendant

10   high-zinc-content brass plumbing components were not properly or adequately designed, tested,

11   engineered, marketed, distributed, marked, labeled, represented (including instructions and

12   warnings), selected, or installed such that Plaintiffs and their members have been substantially

13   damaged or injured thereby, and that Defendants knew or should have known that the Subject

14   Homes, which contain defective high-zinc-content brass Vanguard/Viega-brand and

15   Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-content brass plumbing

16   components, are defective because they are not and were not developed, designed, manufactured,

17   assembled, constructed, plumbed, distributed, marketed, sold, and/or warranted in accordance

18   with applicable laws, codes, and/or standards of care.

19   65.    Plaintiffs allege that the Defendants were under a duty to exercise ordinary care to

20   avoid reasonably foreseeable harm to Plaintiffs and their members, and knew or should have

21   foreseen with reasonable certainty that Plaintiffs and/or their members would suffer injury and/or

22   monetary damages as set forth herein by using, specifying for use, and/or installing the

23   Vanguard/Viega-brand and/or Wirsbo/Uponor-brand plumbing systems and attendant high-zinc-

24   content brass plumbing components in the Subject Homes.

25   66.    Plaintiffs are informed, believe, and thereupon allege that Defendants breached

26   said duty by negligently designing, developing, manufacturing, distributing, marketing, and/or

27   selling unreasonably unsafe and defective plumbing systems and attendant parts, which were

28   installed and used in the Subject Homes, and/or by selecting and/or installing said plumbing

systems and components in the Subject Homes, or causing the same to be installed, in a manner inconsistent with manufacturer's specifications, local, state and national codes, and/or standards of performance within the industry, as well as failing to select and/or use materials that are capable of performing in a defect-free manner.

67.     Defendants' negligence includes the failure to provide adequate information to local building code authorities. Plaintiffs, their members, and/or their predecessors-in-interest are members of the class of persons that the building codes and ordinances were designed to protect. Such violations are negligence per se on the part of Defendants.

68.     Defendants' negligence includes misrepresentations about the defective plumbing systems and components given to Plaintiffs, their members, and/or their representatives, upon which they relied to their detriment and damage.

69.     As a direct and proximate result of the Defendants' negligence, Plaintiffs and their members have been, and will continue to be, caused damage as more fully described herein including, but not limited to blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, loss of use and function of the plumbing system and related improvements and/or appliances provided by others, resultant damage to the Subject Homes and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including the leaching of lead into the Subject Homes' potable-water-delivery systems, and economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest and/or expenses associated therewith. These damages and others are expected to increase over time as the defective systems and components continue to fail.

70.     As a further direct and proximate result of Defendants' negligence, Plaintiffs and their members have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the Subject Homes to prevent further damage and to restore the Subject Homes to their proper habitable condition.

COMPLAINT

1   Plaintiffs and their members have also been compelled to resort to litigation against Defendants
2   to judicially resolve their differences.

3       71.     Plaintiffs and their members will establish the amount of their damages at the time
4   of trial according to proof.

5       72.     The damages and/or injuries suffered by Plaintiffs and their members, are of the
6   kind that ordinarily do not occur in the absence of negligence, negligence per se, carelessness,
7   and/or as a result of un-workmanlike conduct.

8       73.     The damages and/or injuries suffered by Plaintiffs and their members were caused
9   by an agency or instrumentality over which Defendants had the exclusive right or control, and
10  which was not mishandled or otherwise changed after Defendants relinquished control.

11      74.     The damages and/or injuries suffered by Plaintiffs and/or their members were not
12  due to any voluntary action on the part of Plaintiffs and/or their members.

13      75.     Defendants have superior knowledge and/or are in a better position to explain the
14  damages and/or injuries suffered by Plaintiffs and their members.

15      76.     Plaintiffs incorporate the prayer for relief as though set forth herein.

16                          **SIXTH CAUSE OF ACTION**

17                          **(Strict Products Liability)**

18                  **(By Plaintiffs Against All Defendants)**

19      77.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this
20  Complaint as though fully set forth herein.

21      78.     At all relevant times herein, Defendants, developed, designed, manufactured,
22  supplied, distributed, marketed, sold, warranted, selected materials, and installed, or caused to be
23  installed, defective plumbing systems and component parts in the Subject Homes, notably
24  defective high-zinc-content brass Vanguard/Viega-brand and/or Wirsbo/Uponor-brand plumbing
25  systems and attendant high-zinc-content brass plumbing components, that have prematurely
26  failed due to dezincification corrosion, so as to cause the Subject Homes to be in a dangerous,
27  defective, unsafe, and unfit condition for habitation.

28

79.     Defendants knew and/or should have known and expected that their products would be placed in the stream of commerce and on the market, and would reach Plaintiffs and their members without substantial change and would be installed in the same defective condition in which they were originally designed, manufactured, and sold.

80.     At all times relative hereto, Defendants owed a duty of reasonable care to the Plaintiffs and their members in the design, development, manufacture, distribution, marketing, sale, use, selection, and installation of materials in the Subject Homes.

81.     Defendants breached their duties by failing to adequately and properly design, develop, manufacture, distribute, market, warn, sell, select, and/or install the plumbing systems and component parts in the Subject Homes in that said system and component parts are defective and/or otherwise unsuitable for use, resulting in failures and damage to Plaintiffs and their members.  For example, but not limitation, the plumbing systems and components have failed (dezincified), caused damage to other property, and caused blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, stress, corrosion, cracking, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, leaching of lead into the Subject Homes' potable-water-delivery systems, and other damages.  Defendants had prior notice and knowledge of these defects and potential damages, and failed to act timely and accordingly to remedy these defects.

82.     As a direct and proximate result of the foregoing, Plaintiffs and their members have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the Subject Homes to prevent further damage and to restore the Subject Homes to their proper habitable condition.  Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.  As a further direct and proximate result of the foregoing, Plaintiffs and their members have been compelled to resort to litigation against Defendants to judicially resolve their differences.

83.     Plaintiffs' and their members' damages and/or injuries, are sufficient circumstantial evidence of proof of the existence of a defect or an unreasonably dangerous condition, and evidence of a defect or an unreasonably dangerous condition, is properly inferred under the doctrine of res ipsa loquitur.

84.     Plaintiffs incorporate the prayer for relief as though set forth herein.

**SEVENTH CAUSE OF ACTION**

**(Violation of Standards of Residential Construction)**

**(By Plaintiffs Against All Defendants)**

85.     Plaintiff re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

86.     Individual product manufacturers, material suppliers, builders, general contractors, and subcontractors are subject to an action for recovery of damages for the violation of the standards enumerated in California Civil Code §895, et seq., including California Civil Code § 896(a)(15), which provides as follows:  "Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems."

87.     Defendants are liable for damages arising out of and related to the incorporation, at the time of original construction, of high-zinc-content brass fittings and plumbing components into Plaintiffs' and class member's plumbing systems, which yellow brass fittings are corroding and impeding the useful life of plaintiff and the class member's plumbing systems.

88.     As set forth above, as a direct and proximate result of defendants' violations of standards for residential construction, Plaintiffs and class members have been damaged, including, but not limited to the fact, that their yellow brass fittings are corroding and impeding the useful life of their plumbing systems, the cost of removing, replacing, and correcting these defective component parts, the related costs for relocation and alternative housing, and investigative costs, among other damages.

**EIGHTH CAUSE OF ACTION**

**(Violation of Consumers Legal Remedies Act, Civil Code §§ 1750, et seq. )**

**(By Plaintiffs Against All Defendants)**

89.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

90.    Defendants have undertaken unfair methods of competition and unfair or deceptive acts or practices in transactions intended to result or which results in the sale of goods and/or services to a consumer, including but not limited to, the following:

  a.    In violation of Civil Code § 1770( a)( 5), defendants represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

  d.    In violation of Civil Code § 1770( a)( 7), defendants represented that goods or services are of a particular standard, quality, or grade, when they were not;

91.    As a result of the use or employment by defendants of the above-alleged methods, acts, and practices, Plaintiffs and the class suffered damage within the meaning of Civil Code §1780(a), entitling them to, inter alia, restitution, injunctive relief, attorneys' fees, and costs.

92.    Plaintiffs and the class further intend to seek compensatory damages, and, in light of defendants' willful and conscious disregard for the rights of Plaintiffs and the class, and in light of defendants' intentional and fraudulent concealment of material facts, Plaintiffs and the class also intend to seek an award of punitive damages. Pursuant to Civil Code §1782(a), Plaintiffs will serve defendants with notice of alleged violations of the CLRA by certified mail return receipt requested.  If within 30 days after the date of such notification defendants fail to provide appropriate relief for the violations of the CLRA, Plaintiffs will amend this complaint to seek monetary damages (both compensatory and punitive) under the CLRA.

93.    Defendants continue to engage in the above-described deceptive practices and unless enjoined from doing so by this Court will continue to do so, to the damage of its consumers.  Accordingly, Plaintiffs and the class request injunctive relief, including but not

1    limited to, an injunction prohibiting defendants from manufacturing, distributing, and selling

2    high-zinc-content brass fittings and plumbing components, without warning the public about

3    corrosion because of dezincification.

4                                    **NINTH CAUSE OF ACTION**

5    **(Unfair Business Practices, Business & Professions Code §§17200,17500, et seq.)**

6                           **(By Plaintiffs Against All Defendants)**

7         94.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this

8    Complaint as though fully set forth herein.

9         95.    Business & Professions Code § 17200, prohibits any unfair competition, including

10   any unlawful, unfair or fraudulent business act or practice, and any unfair, deceptive, untrue or

11   misleading advertising and, any other act prohibited by Business & Professions Code §§ 17500,

12   *et. seq.*

13        96.    Business & Professions Code § 17500 provides that it is unlawful for any person,

14   firm, corporation, or association, or any employee thereof to intentionally directly, or indirectly

15   perform services, professional or otherwise, or to induce the public to enter into any obligation

16   relating thereto, to make or disseminate in any manner any statement which is untrue or

17   misleading, or which, by the exercise of reasonable care should be known to be untrue or

18   misleading.

19        97.    The conduct of defendants, as set forth in the allegations in this complaint,

20   constitutes unlawful, unfair or fraudulent business practices.

21        98.    Defendants' unlawful conduct includes, but is not limited to, violation of

22   California Civil Code § 896(a)(15). Defendants' fraudulent conduct includes, but is not limited

23   to: (a) manufacturing, distributing, and selling high-zinc-content brass fittings and plumbing

24   components, without warning the public about corrosion because of dezincification, despite

25   knowing of the issue; and (b) warranting that the high-zinc-content brass fittings and plumbing

26   components were fit for their intended use, or merchantable quality, and free of defects, although

27   they knew or should have known this was false.  Defendant's unfair conduct includes, but is not

28

1   limited to, use and sale of a defective high-zinc-content brass fittings and plumbing components,

2   in the circumstances alleged herein.

3          99.     Defendants, statements, marketing, and advertising, as alleged herein, regarding

4   the high-zinc-content brass fittings and plumbing components violate Business & Professions

5   Code §17500.

6          100.    On behalf of the general public, plaintiffs and members of each class request that

7   this Court order that defendants be required to disgorge the profits they have wrongfully obtained

8   through the use of these unlawful, unfair or fraudulent practices, provide restitution, and that an

9   injunction issue to correct the wrongful business practices alleged in this complaint.

10                          **TENTH CAUSE OF ACTION**

11                        **(Declaratory and Equitable Relief)**

12                      **(By Plaintiffs Against All Defendants)**

13         101.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of

14   this Complaint as though fully set forth herein.

15         102.    An actual controversy has arisen between Plaintiffs and the class members on

16   the one hand, and defendants on the other hand, as to the parties' respective rights and

17   obligations.  Plaintiffs and the class members contend that the acts and practices of

18   defendants as hereinabove alleged are unlawful, unfair and/or fraudulent, or constitute unfair

19   methods of competition and unfair or deceptive acts or practices, and defendants contend to

20   the contrary.

21         103.    An actual controversy and dispute exists by and between Plaintiffs (and their

22   members) and the Uponor Defendants concerning their respective rights and duties in that

23   Plaintiffs are informed and believe and thereupon allege that the Uponor Defendants are the

24   successors, agents, members or alter egos of one another such that their business liabilities,

25   responsibilities, acts, omissions, and practices are imputed to one another, or that their

26   fictitious business forms should be set aside.  The Uponor Defendants are owned, managed,

27   controlled, and operated as a common business enterprise and as the mere extension of

28   UPONOR CORPORATION'S business operations, both directly and indirectly, and are

31

COMPLAINT

responsible for the development, design, manufacture, marketing, and mass distribution of the defective high-zinc-content brass Wirsbo/Uponor-brand potable-water-delivery system California and at the Wirsbo Homes. The liabilities, responsibilities, acts, omissions, and damages caused by the subsidiary-sibling companies can and should be imputed to their parents or related businesses or enterprises. The determination of this issue is essential to the administration of justice in this case. Plaintiffs respectfully ask the Court to resolve this issue prior to trial.

104.   An actual controversy and dispute exists by and between Plaintiffs (and their members) and the Viega Defendants concerning their respective rights and duties in that Plaintiffs are informed and believe and thereupon allege that the Viega Defendants are the successors, agents, members or alter egos of one another such that their business liabilities, responsibilities, acts, omissions, and practices are imputed to one another, or that their fictitious business forms should be set aside. The Viega Defendants are owned, managed, controlled, and operated as a common business enterprise and as the mere extension of VIEGA GMBH & CO. KG's business operations, both directly and indirectly, and are responsible for the development, design, manufacture, marketing, and mass distribution of the defective high-zinc-content brass Vanguard/Viega-brand potable-water-delivery system in California and at the Vanguard Homes. The liabilities, responsibilities, acts, omissions, and damages caused by the subsidiary-sibling companies can and should be imputed to their parents or related businesses or enterprises. The determination of this issue is essential to the administration of justice in this case. Plaintiffs respectfully ask the Court to resolve this issue prior to trial.

105.   Plaintiffs and the class members contend that the acts and practices of defendants as hereinabove alleged are unlawful, unfair and/or fraudulent, and defendants contend to the contrary.

COMPLAINT

# ELEVENTH CAUSE OF ACTION

## (Alter Ego)

### (By Plaintiffs Against The Uponor Defendants)

106.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

107.   Plaintiffs are informed, believe, and thereupon allege that UPONOR CORPORATION is the parent or grandparent corporation of UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY.  These Uponor Defendants form, with UPONOR CORPORATION at the apex, a worldwide group of interrelated companies that are commonly engaged in the line of business that is designing, developing, testing, manufacturing, distributing, supplying, marketing, selling, and warranting plumbing and climate-control products for the construction and public utility industries.

108.   Plaintiffs are informed, believe, and thereupon allege that UPONOR CORPORATION exercises complete control over the activities and operations of its subsidiary/child entities, UPONOR GROUP; UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY, to the extent that these subsidiary/child entities are the mere alter egos of their parent, UPONOR CORPORATION.

109.   Plaintiffs are informed, believe, and thereupon allege that the unity of interest and ownership between the Uponor Defendants is such that the subsidiary/child entities are inseparable from their parent, UPONOR CORPORATION.

110.   To recognize these subsidiary/child entities as viable corporate entities separate and apart from UPONOR CORPORATION and thus insulate UPONOR CORPORATION from liability to Plaintiffs would, under these circumstances, sanction injustice and operate as a fraud against Plaintiffs.  Plaintiffs should be entitled to pierce the corporate veil of the subsidiary/child entities behind which UPONOR CORPORATION has

1  attempted to hide in committing its acts and omissions that have and will continue to

2  damage Plaintiffs and their members.

3        111.   Plaintiffs incorporate the prayer for relief as though set forth herein.

4                        **TWELFTH CAUSE OF ACTION**

5                              **(Alter Ego)**

6              **(By Plaintiff Against The Viega Defendants)**

7        112.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of

8  this Complaint as though fully set forth herein.

9        113.   Plaintiffs are informed, believe, and thereupon allege that VIEGA GMBH &

10  CO. KG is the parent or grandparent corporation of VIEGA INTERNATIONAL GMBH;

11  VIEGA, INC.; VIEGA, LLC; VANGUARD INDUSTRIES, INC; VANGUARD PIPING

12  SYSTEMS, INC.; and VG PIPE, LLC.  These Viega Defendants form, with VIEGA GMBH

13  & CO. KG at the apex, a worldwide group of interrelated companies that are commonly

14  engaged in the line of business that is designing, developing, testing, manufacturing,

15  distributing, supplying, marketing, selling, and warranting plumbing products for the

16  construction industry.

17        114.   Plaintiffs are informed, believe, and thereupon allege that VIEGA GMBH &

18  CO. KG exercises complete control over the activities and operations of its subsidiary/child

19  entities, VIEGA INTERNATIONAL GMBH; VIEGA, INC.; VIEGA, LLC; VANGUARD

20  INDUSTRIES, INC; VANGUARD PIPING SYSTEMS, INC.; and VG PIPE, LLC, to the

21  extent that these subsidiary/child entities are the mere alter egos of their parent, VIEGA

22  GMBH & CO. KG.

23        115.   Plaintiffs are informed, believe, and thereupon allege that the unity of interest

24  and ownership between the Viega Defendants is such that the subsidiary/child entities are

25  inseparable from their parent, VIEGA GMBH & CO. KG.

26        116.   To recognize these subsidiary/child entities as viable corporate entities

27  separate and apart from VIEGA GMBH & CO. KG. and thus insulate VIEGA GMBH &

28

CO. KG. from liability to Plaintiffs would, under these circumstances, sanction injustice and operate as a fraud against Plaintiffs.  Plaintiffs should be entitled to pierce the corporate veil of the subsidiary/child entities behind which VIEGA GMBH & CO. KG. has attempted to hide in committing its acts and omissions that have and will continue to damage Plaintiffs and their members.

117.    Plaintiffs incorporate the prayer for relief as though set forth herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    For general, special, and consequential damages pursuant to all other statutory or common law causes of action, in an amount in excess of $75,000;

2.    For the cost to repair and/or replace the defective plumbing systems and products;

3.    For costs and expenditures to correct, cure, or mitigate injustices and damages caused or that will be caused by the defects and/or deficiencies as set forth herein;

4.    Economic losses associated with the defects and/or deficiencies, including loss of use, relocation, and alternative housing;

5.    For equitable entitlement to attorney's fees and costs from the common fund;

6.    For attorney's fees and costs pursuant to California Code of Civil Procedure section 1021.5;

7.    For investigative costs pursuant to California Civil Code §944;

8.    For a preliminary and permanent injunction prohibiting defendants from engaging in the unlawful, unfair or fraudulent conduct, or unfair methods of competition, alleged herein;

9.    For any and all other relief available under Business and Professions Code sections 17200 and 17500, *et. seq.*, including but not limited to restitution and disgorgement of monies received through defendants' unlawful, unfair or fraudulent business practices;

10.    For an award of pre-judgment interest on all monetary damages, fees, and costs awarded in this action;

11.    For a declaratory judgment adjudicating the relative rights and duties of the parties;

COMPLAINT

1

12.    For such other and further relief as the Court deems just and proper.

2

3    DATED: December 8, 2011

KABATECK BROWN KELLNER LLP

4

5    By: _____

6    Brian S. Kabateck
     Joshua H. Haffner

7    Attorneys for plaintiffs on behalf of
     himself and all others similarly

8    situated

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury of all claims and causes of action in this lawsuit.

DATED:  December 8, 2011

KABATECK BROWN KELLNER LLP

By: _____

Brian S. Kabateck
Joshua H. Haffner
Attorneys for plaintiff on behalf of
himself and all others similarly
situated

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## CV11- 10256 PSG (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Joshua H. Haffner, SBN 188652
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ANTHONY NGUYEN, an individual on behalf of himself and all others similarly situated,

                                        PLAINTIFF(S)

                    v.

VIEGA, INC., a Delaware corporation; VIEGA, LLC, a Delaware limited liability company; see attachment,

                                        DEFENDANT(S).

CASE NUMBER

CV1110256 PSG (PLAx)

**SUMMONS**

TO:     DEFENDANT(S):

        A lawsuit has been filed against you.

        Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Joshua H. Haffner_____, whose address is _644 South Figueroa Street, Los Angeles, CA 90017_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

                                        Clerk, U.S. District Court

Dated: __DEC 1 2 2011_____

                    By: _____

                                        Deputy Clerk

                                        *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                        **SUMMONS**

# ATTACHMENT

VIEGA, INC., a Delaware corporation; VIEGA, LLC, a Delaware limited liability company; VG PIPE, LLC, a Delaware corporation; VANGUARD PIPING SYSTEMS, INC., a Kansas corporation; VANGUARD INDUSTRIES, INC., a Delaware corporation; VIEGA GMBH & CO. KG, a German company; VIEGA INTERNATIONAL GMBH, a German company; UPONOR CORPORATION, a Finnish corporation; UPONOR GROUP, a Finnish corporation; UPONOR, INC., an Illinois corporation; WIRSBO COMPANY, an Illinois company; UPONOR WIRSBO COMPANY, an Illinois company; DOE INDIVIDUALS 1-20,000; and ROE BUSINESS or GOVERNMENTAL ENTITIES 1-20,000,

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ANTHONY NGUYEN, an individual on behalf of himself and all others similarly situated,

**DEFENDANTS**
VIEGA, INC., a Delaware corporation; VIEGA, LLC, a Delaware limited liability company, VG PIPE, LLC, a Delaware corporation; VANGUARD PIPING SYSTEMS, INC. a Kansas corporation; et al.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

KABATECK BROWN KELLNER LLP
644 South Figueroa Street, Los Angeles, California 90017
Telephone: (213) 217-5000 Facsimile: (213) 217-5010

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☑2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☑5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☑3 | Foreign Nation | ☐6 | ☑6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of Warranty.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☑ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
    ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
  ☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
  ☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Delaware, Kansas, Illinois, Germany and Finland |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date  December 8, 2011

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |